## SUPREME COURT.

### In the Matter of the Petitions and Applications of The United States Rolling Stock Company.

*Jurisdiction — Mortgage foreclosure on railroad running through Ohio, Pennsylvania and New York — Suits commenced in each state — Principal suit in Ohio — Power of New York state courts to grant relief.*

The A. and G. W. R. Co. was incorporated under the laws of the states of Pennsylvania, Ohio and New York. A mortgage upon the Ohio division was executed to one M., as trustee, and another and subsequent mortgage upon all the property in the three states was executed to T. and D., as trustees, who brought suit in each of the three states to foreclose the same. The same receiver was appointed in each state. An application was made in the New York suit by the plaintiff, as creditor, for relief as against the receiver. Such application was opposed upon the ground, among others, that the principal suit was in Ohio; that the suits in New York and Pennsylvania were auxiliary only thereto, and that the relief against the receiver could properly be obtained only in the Ohio suit:

*Held,* that the objection was untenable. The proceedings in each of the states were independent, so far as they related to the property within its limits, and the relief asked for might be obtained in the New York suit without intrenching upon or conflicting with the orders or decisions found to be within the province of the court of the state of Ohio.

*Erie Special Term, January,* 1878.

In the foreclosure suits brought by Taylor and Dunphy (*See Taylor et al.* agt. *The Atlantic and Great Western Railway Co. and others, ante* 275) the same receiver was appointed in each state. An application was made in the New York suit by the United States Rolling Stock Company, as a creditor, for relief as against the receiver. Such application was

Matter of United States Rolling Stock Company.

opposed upon the ground, among others, that the principal suit was in Ohio ; that the suits in New York and Pennsylvania were auxiliary only thereto, and that relief against the receiver could properly be obtained only in the Ohio suit.

*Blatchford, Seward, Griswold & Da Costa,* for petitioner.

*E. C. Sprague, R. P. Ranney* and *John G. Milburn,* opposed.

DANIELS, *J.* — The applications made in this proceeding are three in number. The first is for the payment of $280,899.79, due upon certificates of the receiver of the Atlantic and Great Western Railway Company for the use of rolling stock leased to him by the United States Rolling Stock Company, and used upon the railway. The second is for the payment of one-quarter of one per cent a mile for the use of cars, other than passenger and baggage cars, used in the transaction of the business of the railway while running upon the Erie railway, and in the aggregate amounting to the sum of $12,012.93. And the third is for an injunction restraining the receiver from paying interest on the bonds secured by a mortgage on that part of the railway situated in the state of Ohio.

Upon the threshold of the presentation of these applications, the objection was taken that they should be remitted unconsidered and undecided to the action of the courts of the state of Ohio. That was predicated upon the circumstance that the railway whose earnings were to be affected was chiefly situated in that state, and for that reason the proceedings which had been taken for its foreclosure and sale had been mainly carried on there; and it may possibly be that the jurisdiction of that court might have been so comprehensively involved as to have been properly attended with that result (*Muller* agt. *Dows,* 94 *U. S. Sup. Ct. Repts.,* 444). In the case referred to one suit alone was prosecuted for the

sale of the entire line of road included in the mortgage, but in the proceedings taken for the foreclosure of the mortgage upon this line of railway that was not the fact. While the railway was principally situated in the state of Ohio, it at the same time also passed through the state of Pennsylvania, and so much of the state of New York as intervened between the line of the state and the village of Salamanca. The mortgage which it was designed to foreclose was an incumbrance on this entire property. And in taking the proceedings to secure that end, it appears to have been assumed that it could only be properly and legally done by means of three different actions simultaneously carried on in the courts of each of the three states. The papers in the actions prosecuted in the courts of Pennsylvania and New York do not exhibit it to have been the design that these actions should be merely auxiliary, or subsidiary, to that maintained in the courts of the state of Ohio. The suit pending in this state, on the contrary, appears to have been instituted in the usual and ordinary form for the foreclosure of a mortgage given upon property situated within its limits. The complaint is in the form properly adapted to that object, and the substantial relief applied for is the sale of the mortgaged property under and in conformity to the judgment of this court. What has been invoked by it has been simply the enforcement of the laws of this state, so far as they may be found applicable to its subject-matter; and that is, certainly, a duty which no authority would warrant the remission of to the courts of a sister state. If the action had been one for the enforcement of the laws of the state of Ohio concerning rights to real property situated there, a different disposition of the point might become necessary. Comity would then probably require that the laws of that state should be executed by means of its own tribunals. But the action pending in this court embodies neither of those elements. It has been brought to affect property situated within this state, through the application of

legal proceedings provided by its own laws, and requiring the aid of one of its own tribunals. And the fact that similar orders have been made in the course of its prosecution to those entered in the court of the state of Ohio does not conflict with, but rather tends to confirm this position. They may have been, in terms, entered more broadly than the final object in view could have required. But that did not change their nature, which evidently was the assimilation of the proceedings *pari passu* in all three of the courts. They were entered by consent, and strict accuracy of verbiage was not required to complete the purposes of the parties. All that has been done confirms but one view, and that is that the proceedings in each of the states were independent, so far as they related to the property within its limits, but at the same time they were required to be uniform, because of the uniformity of the interests to which they related. The objection made to the consideration of these applications must, therefore, be overruled. But in making that determination, it may be proper to disclaim the existence of any intention to entrench upon or conflict with the orders or decisions found to be within the province of the court of the state of Ohio. The first or Ohio mortgage, as it has been designated, is wholly upon so much of the railway company's property as is situated within the bounds of that state. And the same observation is equally as accurate concerning so much of the mortgage under foreclosure as includes that property. To that extent the jurisdiction of that court, as the actions have been commenced and presented, must be held to be exclusive. But with the greatest respect for its proceedings, ability and authority, that can in no proper sense be held to be sufficient to preclude the consideration of the merits of these several applications.

They proceed essentially upon contracts made between the Rolling Stock Company, a corporation existing under the laws of this state, and the receiver, who has received his appointment under the several orders of the courts of the three states. The making and existence of these contracts have

been conceded in the case; and while their terms are, to a certain extent, presented for construction, they themselves have not been made the subject of any denial. The point of time to which the first agreement related has become involved in dispute, but the adjustment of that dispute is not required for the disposition of the controversy between the parties. The contract itself was made dependent for its validity upon the concurring sanction of the courts of Ohio, Pennsylvania and New York, and that it in the same terms received. It may have been unreasonable and exorbitant in the compensation provided for the use of the cars; but there is nothing whatever in these proceedings showing that to have been the case, and if there had been, that could not prevent its observance as long as the receiver took no measures to secure its revocation, or that of the orders by which it was in plain terms sanctioned and approved. He required the cars leased for the transaction of the business of the railway committed to his custody, and the terms submitted to seem to have been the most favorable under which they could at the time be procured; and, after obtaining and using them in that manner, it is entirely too late to advance the objection that the agreement made was more liberal than it should have been in the way of its provisions for remuneration. The presumption upon this subject is in favor of the justice of the claim made, as the facts are now presented, and that will so far sustain the legality of the demand here made for payment. The amount shown to have accrued, and which has not been paid under the contract, is the sum of $280,879.79. But that fact, of itself, does not entitle the Rolling Stock Company to a present direction for its payment. That was not the nature of the obligation which the contract placed upon the receiver. But what he agreed to do was, that he would " account to and pay the Rolling Stock Company for the use or rent of the rolling stock used by him, from the date of his appointment to the date of this agreement, in the same manner and upon the same rate and terms as herein stipulated in respect to the stock

above specified, such payment to be made by delivery of the receiver's certificates," &c. And the manner of such stipulated payment was, that he should make and deliver his official monthly certificates to the Rolling Stock Company for the rental of its cars used by him, bearing interest at the rate of seven per cent per annum, and "payable by him, from time to time, as rapidly as he may be able to do so, from the funds coming to his hands as such receiver, by applying all the net income derived from the operation of the road, after paying current expenses of the receivership and operating the road, and the rental of leased lines and the interest on the old Ohio first mortgages, to the redemption of the certificates issued by the receiver in the order of their issue; it being understood and agreed that these certificates are, by their terms and in pursuance of orders to be made by the courts which appointed said receiver, so expressly authorized to constitute a lien upon the income of the railroad, &c., embraced in such receivership, and likewise a lien prior to the mortgage bonds secured by the second mortgage." The obligation of the receiver for the payment of the certificates to be issued by him was to the same effect, but more tersely expressed in the order of this court declaring its approval of the contract. He was then "directed to appropriate the funds coming into his hands as receiver, to the payment of said certificates on a par with his other operating expenses, preferring thereto, in the order of payment, only claims for labor or services, rentals of leased lines by this court ordered to be paid and the interest on the mortgage represented by Louis H. Meyer and Frederick Schuchardt, trustees;" and the certificates not so paid were declared to be indebtedness of the receiver, and as such chargeable on the mortgage property and its proceeds.

The obligation to pay the certificates which was thus imposed upon the receiver was qualified, not absolute. It was simply to pay, as far as he should be able with the proceeds remaining in his hands, from the earnings of the road after the payment of claims for labor or service, rentals of

the leased lines ordered to be paid, and interest on the first or Ohio mortgage bonds, and that the answer of himself and the affidavits made by William H. Taylor, one of the trustees under the second mortgage, show him to have performed. By the petition, a different statement of the case was at first made. It was there asserted that he had devoted the earnings of the railway to other demands than those mentioned in the agreement and order; but that has been completely refuted by these affidavits. The verification of the petition by the president of the Rolling Stock Company depended for its effect wholly on the accuracy of information derived by him from some undisclosed source. He may very well, and very honestly, have been mistaken; and he probably was so, for the receiver and the trustees have based their statements upon facts that were within their knowledge, and they must, for that reason, be entitled to complete reliance in what they have so positively affirmed. As this part of the case now stands, the receiver has performed the terms of his agreement, and he can be required to do no more by any order which this court would be justified in making. It was suggested on the argument that reference for a further investigation into the truth of these statements should be made if the preponderance of proof was found to be opposed to the application; and that would ordinarily be directed if the conflict between the affidavits was of an irreconcilable character; but that is plainly not now the case. One of the affiants has stated the facts as he was informed they existed. Those opposed to him have simply shown the information on which he acted to have been unreliable, because the fact itself had no existence. The case is not one for a reference, but for a denial of the application, for the reason that it has been shown to be without support.

The contract under which the second claim arises was a modified continuance of the preceding agreement, after the last day of December, 1876. It was made by correspondence, in which the receiver was offered the use of all other than

passenger and baggage cars for the mileage earned by them, at the rate of one cent per mile; and that has been allowed to the Rolling Stock Company by the receiver, so far as the cars were used upon the railway committed to his custody. But it appeared that these cars had also been used upon the Erie railway, and for that use the receiver was allowed by that company only three-fourths of one cent per mile, and for that reason he restricted his credits to the Rolling Stock Company to the same sum. This portion of the controversy is still more peculiarly than the other within the province of this court, for it not only arose under a contract deriving its validity from the order of this court, but besides that it related to what has transpired in this state. At least that may be reasonably presumed from the circumstance that the cars were used by the Erie Railway Company. The contract which was made contemplated but one use of the cars, and that was in the business of the receiver; and for that, where-ever it might be had, he was to pay one uniform measure of compensation — the sum of one cent a mile for each car. The terms made use of to express the understanding of the parties were plain, and seem to leave no room for construction. If the receiver permitted the cars to be used by the Erie Railway Company, he could only do so under the terms he had agreed to pay for their use. No discrimination whatever was made, because he might not realize that amount himself, and none can properly be made by the court. As to the $12,012.93 claimed on this account, the application of the Rolling Stock Company must be allowed to prevail; and the order to be made should direct payment of this sum from the moneys properly applicable to it in the receiver's hands.

The motion for the injunction depends upon the effect which should be given to the provision allowing interest to be paid upon the first mortgage debt contained in the con-tract first considered. It appears that the trustee under the mortgage was about to apply for an order to sell the property included in that mortgage; that was the part of the railway

which was located in Ohio. To prevent such a sale, which would have been injurious to the interests of all other parties, the trustees agreed with the receiver, with the sanction of the court in Ohio, to pay an installment of one and three-fourths per cent, by way of interest, on the bonds secured by this mortgage, every three months. And for that the sale was to be correspondingly postponed. In brief, it was an agreement to pay seven per cent interest in four quarterly installments, and that was the rates of interest reserved by the mortgage. By the terms of the contract which was made with the Rolling Stock Company, the interest on this mortgage debt was placed upon the same footing as the receiver's current expenses and those of operating the road, and for that reason entitled to be preferred in the way of payment to the certificate issued for the line of the rolling stock. The interest provided for was not that accruing for any particular period of time, but including all the interest arising upon that debt. It was a superior lien upon the property over which the receivership extended, for the nonpayment of which it might at any time be sold. And that must have been the reason why it was so specially excepted in the agreement. The same intent which would include and provide against a part of the accruing interest would equally include it all; and the contract should be construed and enforced in that spirit.

But while that should be the construction, the circumstance so often mentioned must not be overlooked, that this Ohio first mortgage was only made an incumbrance upon so much of the railway as was within that state. It was a charge upon no other property. For that reason, both its principal and interest must be confined to that, as the source from which its payment should be obtained. But the papers showed that nearly all the earnings of the railway were obtained from that portion of it; and under the agreement with the Rolling Stock Company, they may, so far, certainly, be properly used in the payment of this interest; but whatever earnings may be derived from the portion of the road situated in this state, cannot law-

fully be used in the satisfaction of that claim. It in no way became a lien upon such earnings, and they consequently cannot be appropriated to its satisfaction. Neither the agreement made with the trustee of the Ohio first mortgage, nor the order approving it, requires any thing of that kind from the receiver. He has been merely allowed to pay that interest from the moneys in his hands as receiver, and it must have been intended by the court that he should only use in that way such moneys as could be legally applied to the payment of the debt provided for by the order and the agreement. All that had been legally hypothecated by that mortgage, was so much of the railway as was in the state of Ohio, and the payments on account of it must be made with the moneys secured from that source. This is all that the court, by its order, could have contemplated or intended to allow. It is the plain effect of the order itself, and a broader construction of it would be unreasonable. And while the receiver should not be controlled by a technical injunction, he should still be ordered not to pay the earnings of so much of the railway as is in this state, upon the Ohio mortgage debt, either by way of interest or principal. This direction will dispose of the remaining of these applications, and it is believed that neither conflict of jurisdiction, nor any improper discrimination against the receiver, will be found to arise in any form from the points which have been considered and decided, and at the same time all the relief has been awarded to the applicant which the evidence before the court will justify it in giving. The result is that the first application will be denied, while the second and third must be allowed to succeed to the extent already indicated.